**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION**

LEANDER BROWN,                          )
                                        )
        Plaintiff,                      )
                                        )
vs.                                     )
                                        )        NO. 3:12-CV-577
THE SALVATION ARMY,                     )
RAY AND JOAN KROC CORPS                 )
COMMUNITY CENTER,                       )
                                        )
        Defendant.                      )

## OPINION AND ORDER

This matter is before the Court on (1) The Salvation Army's Motion for Summary Judgment, filed on May 12, 2014, and (2) The Salvation Army's Motion to Strike Plaintiff's Response, filed on July 25, 2014. For the reasons set forth below, the motion for summary judgment is **GRANTED**, and the motion to strike is **DENIED** as moot. Accordingly, this case is **DISMISSED WITH PREJUDICE.**


BACKGROUND

On July 12, 2012, Plaintiff, Leander Brown ("Brown"), filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against his former employer, The Salvation Army. In his charge, Brown alleged that he was terminated based on his race and gender in violation of Title VII of the Civil Rights Act. The EEOC issued its Dismissal and Notice of Rights on August 28, 2012. (DE# 1-1.)

Brown filed his complaint in federal district court on October 9, 2012, using a preprinted "Employment Discrimination Complaint." (DE# 1.) While Brown checked the box indicating his claim is being made pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. section 621, his statement of legal claim focused solely on The Salvation Army's alleged race and gender discrimination. On July 30, 2013, the Court dismissed Brown's ADEA claim, but allowed his Title VII claim to proceed. (DE# 14.) Pursuant to the Court's Scheduling Order, any amendments to the pleadings were to be filed by November 14, 2013, and the discovery deadline was March 20, 2014. (DE# 21.)

On May 12, 2014, The Salvation Army filed a motion for summary judgment seeking dismissal of Brown's remaining Title VII claim. (DE# 41.) Because Brown is proceeding *pro se*, The Salvation Army provided him with a Notice to *Pro Se* Litigant as required by Local Rule 56-1 (DE# 40). *See* N.D. Ind. L.R. 56-1(f) & App. C.[1] The Notice included the text of both Federal

---

[1] The Salvation Army requested oral argument in its summary judgment motion. Local Rule 56-1 states that summary judgment motions will be decided without oral argument unless the Court grants a request made under Local Rule 7-5, or the Court directs otherwise. *See* N.D. Ind. L.R. 56-1(d). In this case, The Salvation Army's request for oral argument does not comply with Local Rule 7-5 because it failed to serve a separate document explaining why oral argument is necessary. *See* N. Ind. L.R. 7-5(a)(1). The Court does not find oral argument necessary to rule on this motion.

Rules of Civil Procedure Rule 56 and Local Rule 56-1. (DE# 40, at 2-3.)

Brown filed a response to the motion for summary judgment on July 11, 2014, several weeks after the response brief deadline had passed. Brown's responses states in its entirety:

> I am asking that the courts do not dismiss my complaint in its entirety and award defendant attorney fees and its actual costs. I am the one that has been treated with injustice.
>
> Their [*sic*] were some things that was said about me that was untrue in this matter. Even things asked at my deposition. I feel that i [*sic*] was taking [*sic*] advantage of cause i [*sic*] did not have an attorney.

(DE# 53.) The Salvation Army filed a motion to strike Brown's response on July 25, 2014, arguing that the response was untimely and failed to comply with Local Rule 56-1. (DE## 58, 59.) On July 28, 2014, Brown filed a two-sentence response to the motion to strike, indicating that he had been unaware of any deadline to file his response to the summary judgment motion. (DE# 60.)

On the same day, Brown also filed a one-page document entitled, "Suing Defamation of Character." (DE# 61.) The Salvation Army construed this document as a motion for leave to amend the complaint, and filed its response thereto on August 11, 2014. (DE# 62.) The Salvation Army asked the Court to deny what it perceived to be Brown's motion and sought sanctions

against Brown pursuant to Rule 11 of the Federal Rules of Civil Procedure.

On August 22, 2014, Brown filed a one-paragraph document entitled, "Emotional Distress," in which he asked the Court to deny The Salvation Army's request for sanctions. (DE# 64.)


DISCUSSION

The Court will address The Salvation Army's summary judgment motion, its motion to strike Brown's response, Brown's "Suing Defamation of Character" submission, and The Salvation Army's request for sanctions, in turn.

Summary Judgment

Summary Judgment Standard

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* To determine whether a genuine dispute of

material fact exists, the Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *See Ogden v. Atterholt,* 606 F.3d 355, 358 (7th Cir. 2010). A party opposing a properly supported summary judgment motion may not rely on allegations in his own pleading, but rather must "marshal and present the court with the evidence [he] contends will prove [his] case." *Goodman v. Nat'l Sec. Agency, Inc.,* 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009) (citation omitted). If the non-moving party fails to establish the existence of an essential element on which he bears the burden of proof at trial, summary judgment is proper. *See Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

Facts

In determining what facts to rely upon in ruling on the instant summary judgment motion, this Court considers the requirements of Local Rule 56-1. This Rule requires the party seeking summary judgment to include a "Statement of Material Facts" in the memorandum or appendix accompanying the summary judgment motion. N.D. Ind. L.R. 56-1(a). Rule 56-1 also provides that a party opposing summary judgment must file a response brief and "any materials that the party contends raise

a genuine dispute." N.D. Ind. L.R. 56-1(b)(1)(B). The response brief or its appendix "must include a section labeled 'Statement of Genuine Disputes' that identifies the material facts that the party contends are genuinely disputed so as to make a trial necessary." N.D. Ind. L.R. 56-1(b)(2). Failure by the responding party to do so results in the Court accepting as true all properly supported facts presented in the moving party's statement of material facts. *See Patterson v. Ind. Newspapers, Inc.,* 589 F.3d 357, 359-60 (7th Cir. 2009) (district court is within its discretion to strictly enforce compliance with its local rules regarding summary judgment).

The Salvation Army set forth facts it proposes are undisputed in Appendix 1 to its brief in support of its summary judgment motion, with each fact supported by a citation to exhibits in the record. (DE# 42 at 6-7). Brown's two-sentence response memorandum fails to provide any statement of disputed facts. (*See* DE# 53.) It also fails to address The Salvation Army's statement of material facts or identify any material facts that Brown contends are genuinely disputed as to necessitate trial. While Brown is a *pro se* plaintiff, his *pro se* status does not relieve him from complying with procedural rules. *See Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001) (explaining that *pro se* litigants must still comply with procedural rules). Because Brown has not disputed any facts

identified in The Salvation Army's statement of material facts, and has not set forth any additional facts or evidence, the Court takes the facts in The Salvation Army's statement as admitted. *See Greer v. Bd. of Educ.* of City of Chicago, Ill., 267 F.3d 723, 727 (7th Cir. 2001) (court is not "obliged . . . to scour the record looking for factual disputes" where *pro se* plaintiff failed to comply with local rule regarding summary judgment).

This Court has reviewed The Salvation Army's statement of material facts and finds that it is adequately supported with citations to admissible evidence, including Brown's deposition testimony. Therefore, the following supported facts are deemed true for purposes of this motion.

The Salvation Army is a nonprofit organization that operates the Ray and Joan Kroc Corps Community Center ("Kroc Center") in South Bend, Indiana. (Affidavit of Rose Reterstoff ("Reterstoff Aff.") (DE# 42-1) ¶ 3.) The Kroc Center provides facilities, programs and services for children and adults. (*Id.*)

On or about December 19, 2011, The Salvation Army hired Brown as a part-time building supervisor at the Kroc Center. (Deposition of Leander Brown ("Brown Dep.") (DE# 42-11) at 15.) Brown was an at-will employee. (Reterstoff Aff. ¶ 4(b), Exs. 1-B, 1-F (DE## 42-3, 42-7); *see* Brown Dep. at 20.) Brown's

responsibility as building supervisor was to provide a "safe, secure, friendly environment for staff members, volunteers, guests and visitors to the Kroc Center." (Reterstoff Aff. ¶ 4(d), Ex. 1-C (DE# 42-4); *see* Brown Dep. at 17, 23.) Brown was responsible for making sure that women, children and employees felt safe in this environment. (Brown Dep. at 24.)

Upon being hired, Brown received two employee handbooks from The Salvation Army. (Brown Dep. at 19-20; *see* Reterstoff Aff. ¶ 4(c), Exs. 1-B, 1-F (DE## 42-3, 42-7).) The Central Territory Employee Handbook contained a sexual harassment policy. (Reterstoff Aff. ¶ 4(g), Ex. 1-G (DE# 42-8).) At his deposition, Brown acknowledged his obligation to read and comply with the policies contained in both handbooks, including the sexual harassment policy. (Brown Dep. at 19-21.) The Salvation Army's harassment policy states in part:

> We promote a productive work environment and we do not tolerate verbal or physical conduct by any employee that harasses, disrupts, or interferes with another's work performance or that creates an intimidating, offensive, or hostile work environment. All forms of harassment, including sexual harassment, are prohibited and will not be tolerated.
>
> Sexual Harassment: Sexual harassment in the workplace as defined by the Equal Employment Opportunity Commission includes unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature, when
> . . .
>  - Such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating

> an intimidating, hostile or offensive work
> environment.
>
> Sexual harassment may take the form of physical
> contact, sexually related comments, jokes or graphics,
> references to personal appearance, unwelcome sexual
> advances or suggestions or requests for sexual favors.
> In addition, remarks and conduct of a sexual nature
> that may not constitute sexual harassment are also
> inappropriate. . . .
>
> Anyone who believes he or she has been the subject of
> any harassment should report the occurrence
> immediately so that The Salvation Army can take prompt
> action. . . .
>
> Reported incidents will be investigated promptly and
> dealt with in a manner that respects the
> confidentiality of the individuals involved whenever
> reasonably possible. . . . Employees found to have
> engaged in harassment will be subject to disciplinary
> action, including termination in appropriate cases.

(Reterstoff Aff. ¶ 4(g), Ex. 1-G (DE# 42-8).)

In June 2012, The Salvation Army received a complaint from a female employee named Kelly Huston ("Huston") alleging that Brown sexually harassed her. (Reterstoff Aff. ¶ 4(h), Ex. 1-H at 5-7 (DE# 42-9).) Part of Huston's complaint was that Brown was watching her on a security camera while she was talking to others, which made her feel uncomfortable. (*Id.*) On June 25, 2012, The Salvation Army suspended Brown for five days pending its investigation of Huston's allegations. (*Id.* at 4.) Brown was instructed not to contact any employees during his suspension. (*Id.*)

The Salvation Army investigated Huston's allegations, and prepared a written investigation report. (*Id.* at 5-10.) The investigation file includes statements from Brown, Huston, and two other black male employees. (*Id.* at 3, 5-8.) In addition to describing the security camera incident, Huston's statement describes inappropriate sexual comments that Brown made to her about a female employee and a female guest of the Kroc Center. (*Id.* at 6-7.) Employee Antonio Wilson ("Wilson") corroborated Huston's statement that Brown had been watching her from a security camera. (*Id.* at 7-8.) Employee Shawn Rouse ("Rouse") corroborated Huston's statement that Brown had made sexual comments to her, including "[l]ay on the bed and I'll give you a body massage" and "that's my Ho." (*Id.* at 8.) Rouse's statement also indicates that Brown telephoned him after being suspended, and asked him "not to say anything." (*Id.*) Brown's statements reflect that he admitted calling Huston, but denied speaking to any employees in an inappropriate manner. (*Id.* at 3, 5.)

The Salvation Army's investigation concluded that Brown had subjected Huston to sexually aggressive comments and harassment, and recommended immediate termination based on improper conduct and insubordination. (*Id.* at 9.) The Salvation Army subsequently terminated Brown's employment. (*Id.* at 2, 3.)

At his deposition, Brown testified that he was aware of The Salvation Army's sexual harassment policy, and that any employee found violating this policy would be terminated. (Brown Dep. at 21, 30.) He denied making sexual comments to anyone at the Kroc Center. (*Id.* at 42-43, 47.) Brown also testified that he had "no concrete evidence" to support his claim of race discrimination, but had a "gut feeling" about it. (*Id.* at 50.) Brown admitted he had no evidence of gender discrimination. (*Id.* at 51.) Finally, Brown refused to identify any witnesses that would support his discrimination claim at trial. (*Id.* at 51-52.)

### Brown's Title VII claim must be dismissed because there is no evidence that The Salvation Army engaged in race or gender discrimination

Brown alleges that he was discriminated against on the basis of his race and his gender, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5. Race and gender discrimination claims can be proven via an indirect or a direct method. *See Adams v. Wal–Mart Stores, Inc.,* 324 F.3d 935, 938 (7th Cir. 2003); *Langenbach v. Wal-Mart Stores, Inc.*, 761 F.3d 792, 801 (7th Cir. 2014). While Brown has not asserted which method he wishes to proceed on, this Court will examine whether there is a triable issue of fact under either method.

<u>Indirect Method</u>

When using the indirect method, a plaintiff must first make a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). In order to prove a prima facie case of race or gender discrimination, a plaintiff must prove that: (1) he is a member of a protected class; (2) he was meeting his employer's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) other similarly situated employees who were not members of the protected class were treated more favorably. *See Fane v. Locke Reynolds, LLP,* 480 F.3d 534, 538 (7th Cir. 2007). In claims of discriminatory discipline, the second and fourth elements merge. *See Luster v. Ill. Dept. of Corrections*, 652 F.3d 726, 730 (7th Cir. 2011); *Caskey v. Colgate-Palmolive Co.,* 535 F.3d 585, 592 (7th Cir. 2008).

If the plaintiff is able to make out a prima facie case, the burden then shifts to the defendant to make a legitimate, nondiscriminatory reason for the adverse action. *McDonnell Douglas*, 411 U.S. 792 at 802, 93 S.Ct. 1817, 36 L.Ed.2d 668. If the defendant meets this burden, then the plaintiff is afforded a chance to show that the defendant's nondiscriminatory reason is mere pretext for discrimination. *Id*. at 804. To show pretext, the plaintiff must "identify such weaknesses, implausibilities, inconsistencies, or contradictions in the

-12-

purported reasons that a jury could find them unworthy of credence." *Fane*, 480 F.3d at 541. If the defendant "honestly believed the reasons it gave, [the plaintiff] loses even if the reasons are foolish, trivial or baseless." *Id.* (citation omitted); *see Little v. Ill. Dept. of Revenue,* 369 F.3d 1007, 1012 (7th Cir. 2004) (noting the Seventh circuit adheres to the "honest-belief rule": even if the decision was ill-considered or unreasonable, provided that the decision maker honestly believed the nondiscriminatory reason given for the action, pretext does not exist). While the burden does shift between the plaintiff and the defendant, the ultimate burden of persuasion is always with the plaintiff. *See Fane*, 480 F.3d at 538.

It is uncontested that Brown is a black male and that he suffered an adverse employment action when The Salvation Army terminated his employment. (*See* DE# 42 at 17). Because Brown's claim alleges disciplinary discrimination, whether he met The Salvation Army's legitimate performance expectations is of no moment. As the Seventh Circuit has explained:

> Federal employment discrimination laws do not limit their protection to perfect or even good employees. They also protect employees who misbehave or perform poorly. Under Title VII of the Civil Rights Act of 1964, an employer cannot intentionally discipline poor employees more severely on the basis of race, sex, religion, or national origin.

*Luster*, 652 F.3d at 730 (internal quotations omitted). Thus, to prove a prima facie case, the only remaining issue is whether

-13-

Brown can point to another similarly situated employee who was not a member of the protected class and was treated more favorably than he. "To be similarly situated, co-workers must be directly comparable to the plaintiff in all material aspects, but they need not be identical in every conceivable way." *Langenbach*, 761 F.3d at 802 (internal quotation omitted). Whether a co-worker is similarly situated is typically a question for the factfinder, but summary judgment is appropriate where no reasonable jury could find that the plaintiff has met his burden. *See id*.

Here, Brown does not identify anyone who is not a member of a protected class and who was treated more favorably than he. At his deposition, Brown acknowledged The Salvation Army's protocol to terminate an employee's employment if, upon investigation, it determined that the employee engaged in sexual harassment. (*See* Brown Dep. at 30.) When questioned about the existence of any employees who do the same type of work as he, Brown only identified Wilson, one of the black male employees who corroborated Huston's sexual harassment complaint. (*Id.* at 51.) Brown admitted he has no evidence of sex discrimination (*id.* at 51), and only pointed to a "gut feeling" when asked about evidence of his race discrimination claim. (*Id.* at 50). Gut feelings are not enough to prevent summary judgment of a discrimination claim. *See Karazanos v. Navistar Int'l Trans.*

-14-

*Corp.,* 948 F.2d 332, 337 (7th Cir. 1991) (plaintiff's gut feeling and speculation not proof of discrimination). Thus, Brown is unable to make out a prima facie case of discrimination.

Even if Brown could make out a prima facie case, The Salvation Army has proffered evidence of a legitimate, nondiscriminatory reason for terminating Brown: The Salvation Army received a complaint that Brown had sexually harassed a fellow employee. It conducted an investigation (during which the complaint was corroborated by two other employees), and terminated Brown for violating its written harassment policy. In response, Brown puts forth no evidence that would enable a reasonable jury to think that the nondiscriminatory reason The Salvation Army offers for that discharge was a lie contrived to mask racial or gender discrimination. *See Little,* 369 F.3d at 1016. Nor does Brown point to any evidence that The Salvation Army's decision makers had anything other than an "honest belief" that Huston's allegations of sexual harassment were true, and decided to terminate Brown based on her substantiated complaint. Therefore, Brown's Title VII claim fails under the indirect method.

### The direct method

Under the direct method, a plaintiff must "show either through direct or circumstantial evidence that the employer's

decision to take the adverse job action was motivated by an impermissible purpose." *Adams,* 324 F.3d at 938-939. "[D]irect evidence consists of either an outright admission by the decision maker that the challenged action was undertaken because of the [plaintiff's race] or a convincing mosaic of circumstantial evidence . . . that point[s] directly to a discriminatory reason for the employer's action." *Dass v. Chicago Bd. of Educ.*, 675 F.3d 1060, 1071 (7th Cir. 2012) (citations and internal quotations omitted). The record does not demonstrate any admissions of race or gender discrimination by The Salvation Army. Indeed, Brown testified that he had "no concrete evidence" of race discrimination and no evidence of sex discrimination. (Brown Dep. at 50-51.)

Direct evidence can also be circumstantial evidence from which a trier of fact could reasonably infer that The Salvation Army discriminated against Brown because of his race or gender. "Circumstantial evidence can take a number of forms, such as suspicious timing, behavior or comments directed at members of the protected group, evidence showing that similarly-situated employees outside the protected group received systematically better treatment, and evidence that the reason the employer gave for the adverse action was pretextual." *Langenbach*, 761 F.3d at 803 (citation omitted). Ultimately, the circumstantial evidence a plaintiff presents "must point directly to a discriminatory

reason for the employer's action" and be "directly related to the employment decision." *Dass*, 675 F.3d at 1071 (quoting *Adams*, 324 F.3d at 939 and *Venturelli v. ARC Cmty. Servs., Inc.*, 350 F.3d 592, 602 (7th Cir. 2003)).

In reviewing the record, the Court finds no circumstantial evidence pointing directly to a discriminatory reason for Brown's termination. As noted above, Brown has not identified any similarly situated employees who were not members of the protected class and were treated more favorably. *See Langenbach*, 761 F.3d at 803 (noting analysis for similarly situated employees under the direct method is substantially the same as the analysis under the indirect method). Rather, the evidence shows that The Salvation Army terminated Brown after investigating an employee's complaint that Brown sexually harassed her, and other employees corroborated her complaint. Brown provided no evidence that The Salvation Army's decision to terminate was pretextual.

Because the record fails to show indirect or direct evidence that Brown was discharged based on his race or gender, The Salvation Army's motion for summary judgment is **GRANTED**.

Motion to Strike

In light of the Court's ruling on The Salvation Army's summary judgment motion, it need not address The Salvation

Army's motion to strike Brown's summary judgment response. (DE# 58.) The motion to strike is **DENIED** as moot.

Brown's "Suing Defamation of Character" Submission

Brown filed a one-paragraph document entitled, "Suing Defamation of Character." (DE# 61.) The document states in its entirety:

> I am a security officer for the University of Notre Dame for the past 8 years. I have a reputation to uphold, and this company the Kroc Center has slander my name with these fale [*sic*] allegations against me. People were coming up to me telling me that they heard what happen, as to why i [*sic*] was fired from the Kroc Center. This has casused [*sic*] too much stress on me and my wife and kids.

(*Id.*) The Salvation Army construed this document as a motion to amend Brown's complaint, and filed a brief opposing such an amendment. (DE# 62.)

The Court has its doubts as to whether Brown intended this document to be a motion for leave to amend his complaint. If Brown did intend to amend his complaint by this submission, the proposed amendment is futile. *See Hongbo Han v. United Continental Holdings, Inc.*, 762 F.3d 598, 603 (7th Cir. 2014) (district court need not allow plaintiff to amend complaint where amendment is futile); *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) ("Leave to amend need not be granted . . . if it is clear that any amendment would be futile"). The

general allegations in Brown's one-paragraph document fall far short of the requirements to support a claim for defamation.

To establish a claim of defamation under Indiana law, "a plaintiff must prove the existence of a communication with defamatory imputation, malice, publication, and damages." *Trail v. Boys & Girls Clubs of Nw. Ind.*, 845 N.E.2d 130, 136 (Ind. 2006) (internal quotation omitted).[2]  Any statement actionable for defamation must be both defamatory in nature and false. *See id.*  A plaintiff suing for defamation must set out the alleged defamatory statement in the complaint, and for good reason:

> [H]ornbook law stresses the necessity of including the alleged defamatory statement in the complaint.  There is sound reason for this policy, as the absence of a statement in the complaint works a detriment on both the court and the defendant.  The court is handicapped without the statement since, without it, the court

---

[2] In its response brief, The Salvation Army cites to Michigan's defamation law, without explanation. (*See* DE# 62 at 5 (citing *Royal Palace Homes, Inc. v. Channel 7 of Detroit, Inc.*, 495 N.W.2d 392 (Mich. Ct. App. 1992)).)  Both Brown and the Kroc Center are located in Indiana, and Brown's defamation submission infers that he was harmed in Indiana.  Thus, the Court finds that Indiana's defamation law is the appropriate state law to apply.  *See Jean v. Dugan*, 20 F.3d 255, 261-62 (7th Cir. 1994) (applying Indiana defamation law, noting "the place where the conduct causing the injury occurred is the most significant factor. . . .  Conceptually, defamation is an injury to reputation.") (internal quotation omitted).  Because both Indiana and Michigan require that a plaintiff articulate a defamatory statement in his complaint, a more detailed choice of law analysis is unnecessary.  *See id.* at 260 ("[B]efore entangling itself in messy issues of conflict of laws a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states.") (quotation omitted).

> cannot actually determine if the statement is legally
> defamatory. The defendant is placed on an unfair
> footing since the absence of the statement denies her
> the opportunity to prepare appropriate defenses.

*Id.* at 136-37 (internal citations omitted). Here, Brown has not

alleged any defamatory statement with specificity. As a result,

Brown's defamation claim would not survive a motion to dismiss.

Furthermore, amending Brown's complaint to include a

defamation claim at this late stage of litigation would result

in undue prejudice to The Salvation Army, as well as undue

delay. *See Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir.

2008) ("district courts have broad discretion to deny leave to

amend where there is undue delay, bad faith, dilatory motive,

repeated failure to cure deficiencies, undue prejudice to the

defendants, or where the amendment would be futile"). Discovery

in this case closed more than seven months ago, and the deadline

for dispositive motions passed five months ago. The

introduction of a defamation claim would raise entirely new

issues of law and fact that were not addressed during discovery.

The Salvation Army would be unduly prejudiced because it would

be forced to incur additional discovery expenses in addressing

these new issues of law and fact. Furthermore, reopening

discovery to address this new claim would cause undue delay of

the resolution of this litigation. Therefore, to the extent

Brown intended his defamation submission to be a motion for leave to amend his complaint, the motion is **DENIED**.


The Salvation Army's Request for Rule 11 Sanctions

Finally, in its response to Brown's defamation submission, The Salvation Army included a request for sanctions. Rule 11 of the Federal Rules of Civil Procedure authorizes sanctions where a party presents the Court with a pleading or other paper "that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," is not "warranted by existing law," or is lacking in evidentiary support. Fed. R. Civ. P. 11(b). "The central goal of Rule 11 is to deter abusive litigation practices." *Corley v. Rosewood Care Ctr.,* 388 F.3d 990, 1013–14 (7th Cir. 2004) (citation omitted).

A motion seeking Rule 11 sanctions "must be made separately from any other motion," and must be served on the offending party twenty-one days before filing it with the court. Fed. R. Civ. P. 11(c)(2). The Salvation Army improperly included its request for Rule 11 sanctions in its response to Brown's defamation submission. (DE# 62.) Even if such motion had been presented properly, it would be denied.

In deciding a motion for sanctions, the Court may consider a party's status as a *pro se*, non-lawyer litigant, and financial

resources.  The 1993 Advisory Committee Notes to Rule 11 counsel that courts may consider whether the improper conduct was "willful or negligent," whether the responsible person is "trained in the law," and the responsible person's financial resources.  Fed. R. Civ. P. 11 advisory committee's note (1993); *cf. Vukadinovich v. McCarthy*, 901 F.2d 1439, 1445 (7th Cir. 1990) (upholding sanctions against *pro se* litigant for frivolous claim but maintaining that courts may take *pro se* status into account when considering sanctions).  As noted above, the Court is not convinced that Brown's submission was intended to bring an entirely new claim at this late stage of litigation.  If it was, the claim is futile for the reasons provided above.  The Court notes Brown's lack of legal training, and that he was permitted to proceed *in forma pauperis* in this litigation.  (*See* DE# 3.)  Given The Salvation Army's failure to comply with Rule 11, and the lack of showing that Brown filed this one-paragraph document with anything other than a genuine belief that he had been wronged, the request for Rule 11 sanctions is **DENIED**.

CONCLUSION

For the reasons set forth above, The Salvation Army's Motion for Summary Judgment (DE# 41) is **GRANTED**, and its Motion to Strike (DE# 58) is **DENIED** as moot. Accordingly, this case is **DISMISSED WITH PREJUDICE**.


October 10, 2014                   /s/ RUDY LOZANO, Judge
                                   United States District Court